RATTET PASTERNAK, LLP
Proposed Attorneys for the Debtor
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400
Jonathan S. Pasternak, Esq.
Julie A. Cvek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

                                                          Chapter 11

FLEETWOOD FOOD CORP.,                  Case No. 11 B _____ RDD

                                   Debtor.
-----------------------------------------------------------------X

## AFFIDAVIT OF SALVATORE GIZZO PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 AND 9077-1 IN SUPPORT OF AN ORDER SCHEDULING HEARING ON SHORTENED NOTICE ON FIRST DAY MOTIONS

STATE OF NEW YORK         )
                                   ) ss.:
COUNTY OF WESTCHESTER  )

        SALVATORE GIZZO, being duly sworn, deposes and says:

        1.     I am the President and sole shareholder of Fleetwood Food Corp. (the "Debtor"). I have served as President of the Debtor since it incorporated in New York State in 2009 and as such, I am familiar with the Debtor's operations, businesses and financial affairs.

        2.     I submit this affidavit pursuant to Rule 1007-2 and 9077-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and in support of the Debtor's motions and application filed substantially simultaneous with this affidavit (the "First Day Motions").

# INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007

**Local Rule 1007-2(a)(1)**

3. The Debtor owns and operates a Key Food supermarket located at 42 West Broad Street, Mount Vernon, New York.

4. Prior to the Debtor being formed, the local supermarket in the Debtor's neighborhood, an A&P supermarket, closed down and was replaced by a CVS Pharmacy. Without a supermarket in the neighborhood, the Debtor's principal who owned a restaurant at the time was approached by the City of Mount Vernon to convert the restaurant into a supermarket to service the community. The conversion of the restaurant into the supermarket was incentivized by the City of County Vernon both with promised financial assistance as well as other incentives.

5. The Debtor was then formed in 2009 for the purpose of converting the restaurant owned by the Debtor's principal into the supermarket. The Debtor's principal both personally invested and raised $5 million for the build-out of the prior restaurant and supermarket.

6. The grand opening of the supermarket was delayed for two reasons. First, the Debtor experienced delays and expenses in completing the build-out of the supermarket. The Debtor ultimately did not open for business until July 2010. Secondly, and more importantly, the Debtor did not receive almost any of the financial assistance and incentives promised by the City of Mount Vernon on its various commitments. Part of the incentives promised by the City of Mount Vernon included certain improvements to the public parking garage and areas surrounding the supermarket, with the goal of improving the street appeal of the supermarket for the neighborhood. To date, substantially none of these improvements have been completely, let alone started, resulting in a decrease in customer accessibility and foot traffic to the supermarket.

7. In addition, the Debtor was unable to obtain additional licenses for New York State

lotto, beer and food stamps until recently, which the Debtor believes caused potential customers to shop elsewhere.

8. The supermarket consists of 11,000 square feet retail space with an additional 8,000 square feet of basement storage space. The Debtor's revenues peaked at $130,000 per week in late 2010. However, since then the Debtor was forced to replace a poor store manager and suffered a decrease in sales to less than approximately $50,000 per week. The Debtor had forecasted revenues of $200,000 per week, based upon the revenue stream of the prior A&P supermarket servicing the neighborhood. The Debtor believes that in order for it to "break even" and avoid suffering losses, the revenue must be at least $90,000 per week.

9. The delays of the build-out, grand opening and obtaining licenses caused financial distress to the Debtor and the Debtor has accumulated rental arrears to its landlord and the contractor for the build-out of the supermarket.

10. At this juncture, the Debtor is in need of Chapter 11 bankruptcy protection to protect itself from an eviction proceeding and to preserve its lease, which has 13 years remaining, in order to reorganize its affairs and/or sell the supermarket as a turn-key operation.

11. The Debtor intends to use this Chapter 11 proceeding to have a grand re-opening under new management which the Debtor believes will increase its revenues to the pre 2011 levels while the Debtor entertains offers for supermarket or outside investors. To that end, the Debtor has already commenced a sale marketing process and hopes to procure a purchaser with the highest and best bid using the Bankruptcy Code §363 sale process.

**Local Rule 1007-2(a)(2)**

12. This case was not originally commenced under Chapter 7 or 13 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

**Local Rule 1007-2(a)(3)**

13. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

14. A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding "insiders" as that term is defined in § 101(31) of Bankruptcy Code is annexed hereto as **Exhibit "A"**.

**Local Rule 1007-2(a)(5)**

15. A list of the names and addresses of the five largest secured creditors is annexed hereto as **Exhibit "B"**.

**Local Rule 1007-2(a)(6)**

16. A summary of the Debtor's assets and liabilities is annexed as **Exhibit "C"**.

**Local Rule 1007-2(a)(7)**

17. There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

18. None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

19. The Debtor operates from the leased premises located at 42 West Broad Street, Mount Vernon, New York 10552.

**Local Rule 1007-2(a)(10)**

20. The Debtor's substantial assets, as well as books and records are located at 42 West Broad Street, Mount Vernon, New York 10552.

**Local Rule 1007-2(a)(11)**

21. There are no actions or proceedings, pending or threatened, against the Debtor or its property where a judgment against the Debtor or a seizure of its property may be imminent.

**Local Rule 1007-2(a)(12)**

22. The Debtor's senior management consists of Salvatore Gizzo, President.

**Local Rule 1007-2(b)(1)**

23. The estimated payroll to employees (exclusive of officers and directors) for the thirty (30) day period following the filing of the chapter 11 petition is $56,000.

**Local Rule 1007-2(b)(2)**

24. The estimated amount to be paid for services to its officers and directors for the thirty (30) day period following the filing of the Chapter 11 petition is $-0-.

**Local Rule 1007-2(b)(3)**

25. The estimated schedule of cash receipts and disbursements for the thirty (30) day period following the filing of the Chapter 11 petition, net cash gain or loss, obligations and receivables expected to accrue but remaining unpaid, other than professional fees is annexed as **Exhibit "D"**.

## PART III

### FIRST DAY MOTIONS AND APPLICATION
### FOR HEARING ON SHORTENED NOTICE

26. Contemporaneously with this Chapter 11 filing, the Debtor expects to file a number of motions and applications (the "First Day Motions") as follows:

- Debtor's Motion for Order Seeking Authority (I) to Use Cash Collateral Pursuant to Bankruptcy Code Section 363(C)(2), (II) Granting Adequate Protection Therefor(the "Cash Collateral Motion");

- Debtor's Motion for Authorization for the Debtors to (1) pay and honor certain prepetition claims for (i) wages, salaries, employee benefits and other compensation, (ii) withholdings and deductions and (iii) reimbursable expenses; (2) continue to provide employee benefits in the ordinary course of business; (3) pay all related costs and expenses; and (B) directing banks to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing (the "Employee Payroll Motion"); and

- Debtor's Motion for a Order Authorizing Payment to §503(b)(9) Administrative Priority Critical Trade Vendors (the "Critical Vendors Motion")

27. In addition to the First Day Motions, the Debtor has filed an Application for entry of an order scheduling a hearing on shortened notice on the First Day Motions. The relief sought in the First Day Motions is immediately necessary to enable the Debtor to operate effectively as a debtor-in possession following the commencement of its chapter 11 case.

28. I submit that the relief request in the First Day Motions should be heard and determined on an expedited basis in order to allow the Debtor to continue its normal business operations without any interruption, which interruption that could severally detriment the Debtor's ability to successfully reorganize.

29. With respect to the Debtor's Cash Collateral Motion, without immediate relief from the Court authorizing the Debtor's use of cash collateral of its secured creditors, the Debtor's would be unable to conducts its normal business operations, thereby crippling the Debtor's ongoing operations and jeopardizing its reorganization efforts.

30. With respect to the Employee Payroll Motion, the Debtor's employees are critical and necessary for the Debtor's ongoing operations. Should the Debtor be rendered unable to pay its employees their wages as scheduled, there would be irreparable harm caused to the employee morale and possible loss of employees. Should this happen, the Debtor's reorganization efforts would certainly be impaired.

31. With respect to the Critical Vendors Motion, the Debtor submits that said payment to the Critical Vendors is proper because should the Debtor's relationship with these Critical Vendors be severed, the Debtor would lose its ability to stock its inventory thereby impairing the Debtor's ability to services its customers and continue operations

32. Thus, I believe that good cause exists to have a hearing on the First Day Motions which typically requires a minimum of twenty-one (21) days notice as provided for in Federal Rule of Bankruptcy Procedure 2002 and 6003.

33. I have reviewed each of the First Day Motions and Orders and the facts set forth there in are true and correct to the best of my knowledge, information and belief.

## **CONCLUSION**

I request that the Court grant all of the relief requested in the First Day Motions and Applications. Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

/s/ Salvatore Gizzo
Salvatore Gizzo, President

Sworn to before me this
4th day of March, 2011

/s/ Julie A. Cvek
Notary Public
JULIE A. CVEK
Notary Public, State of New York
No. 02CV6136681
Qualified in Queens County
Commission Expires Nov. 14, 2013

# Exhibit A

# List of Debtor's 20 Largest Unsecured Creditors

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
## Southern District of New York

In re  **Fleetwood Food Corp.**  
　　　　　　　　　　　　　　　Debtor(s)

Case No.  **11-22395**  
Chapter  **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

    Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1) *Name of creditor and complete mailing address including zip code* | (2) *Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3) *Nature of claim (trade debt, bank loan, government contract, etc.)* | (4) *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5) *Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| Mattell Contracting Co., Inc.<br>2635 Roberts Avenue<br>Bronx, NY 10461 | Mattell Contracting Co., Inc.<br>2635 Roberts Avenue<br>Bronx, NY 10461 | Contractor for build out | | 1,700,000.00 |
| Mario Silva<br>Portchester, NY | Mario Silva<br>Portchester, NY | Contractor for build out | | 100,000.00 |
| ConEdison<br>JAF Station<br>PO Box 1702<br>New York, NY 10116-1702 | ConEdison<br>JAF Station<br>PO Box 1702<br>New York, NY 10116-1702 | | | 57,547.23 |
| Ron's Refrigeration Co.<br>963 Wildwood Road<br>Oradell, NJ 07649 | Ron's Refrigeration Co.<br>963 Wildwood Road<br>Oradell, NJ 07649 | | | 39,500.00 |
| Fleetwood Park Development, LL<br>c/o M. Teresa Daley Law Office<br>520 Eighth Avenue, 24 Fl.<br>New York, NY 10018 | Fleetwood Park Development, LL<br>c/o M. Teresa Daley Law Office<br>520 Eighth Avenue, 24 Fl.<br>New York, NY 10018 | Nonresidential Real Property rent arrears | | 30,000.00 |
| Bobby Provisions (Boars Head) | Bobby Provisions (Boars Head) | | | 18,925.36 |
| Lido Lighting<br>966 Grand Blvd<br>Deer Park, NY 11729 | Lido Lighting<br>966 Grand Blvd<br>Deer Park, NY 11729 | | | 17,215.93 |
| Nebraskaland<br>355 Food Center Drive<br>building G<br>Bronx, NY 10474 | Nebraskaland<br>355 Food Center Drive<br>building G<br>Bronx, NY 10474 | | | 14,015.97 |
| Farm Fresh<br>157 S Howard St Ste 104<br>Spokane, WA 99201 | Farm Fresh<br>157 S Howard St Ste 104<br>Spokane, WA 99201 | Trade debt | | 7,364.00 |
| Derle Farms Inc.<br>156-02 Liberty Avenue<br>Jamaica, NY 11433 | Derle Farms Inc.<br>156-02 Liberty Avenue<br>Jamaica, NY 11433 | Trade debt | | 6,085.64 |

B4 (Official Form 4) (12/07) - Cont.

In re **Fleetwood Food Corp.**  Case No. **11-22395**
                    Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
(Continuation Sheet)

| (1) Name of creditor and complete mailing address including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5) Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| Sanitation Salvage Corp<br>421 Manida Street<br>Bronx, NY 10474 | Sanitation Salvage Corp<br>421 Manida Street<br>Bronx, NY 10474 | | | 4,947.47 |
| Bimbo Bakeries USA<br>5607 48th Street<br>Maspeth, NY 11378 | Bimbo Bakeries USA<br>5607 48th Street<br>Maspeth, NY 11378 | Trade debt | | 4,466.13 |
| Mondello & Associates | Mondello & Associates | | | 3,750.00 |
| Snapple | Snapple | | | 3,382.10 |
| Panamerican Foods | Panamerican Foods | | | 2,674.59 |
| The Coca-Cola Company<br>P.O. Box 1734<br>Atlanta, GA 30301 | The Coca-Cola Company<br>P.O. Box 1734<br>Atlanta, GA 30301 | Trade debt | | 2,324.41 |
| Triuno Foods | Triuno Foods | | | 2,245.36 |
| Robert Stanziale, Architect PC<br>270 North Avenue<br>New Rochelle, NY 10801 | Robert Stanziale, Architect PC<br>270 North Avenue<br>New Rochelle, NY 10801 | | | 2,215.00 |
| Bakery Espiga<br>52 Oraton St # 54<br>Newark, NJ 07104 | Bakery Espiga<br>52 Oraton St # 54<br>Newark, NJ 07104 | Trade debt | | 1,998.91 |
| Lamart Corp<br>16 Richmond Street<br>Clifton, NJ 07011 | Lamart Corp<br>16 Richmond Street<br>Clifton, NJ 07011 | Trade debt | | 1,998.79 |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the President of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date **March 4, 2011**     Signature **/s/ Salvatore Gizzo**
                                     **Salvatore Gizzo**
                                     **President**

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

## Exhibit B

## List of Debtor's 5 Largest Secured Creditors

| **Creditor** | **Amount Owed** |
|---|---|
| Key Food Co-operative, Inc.<br>1200 South Avenue<br>Staten Island, New York 10314 | $578,685.29 |
| Resnick Supermarket Equipment Corp.<br>510 Wild Turnpike<br>Mountaindale, New York 12763 | $360,000.00 |
| Sterling National Bank<br>500 Seventh Avenue, 11th Floor<br>New York, NY 10018 | $80,000.00 |

## Exhibit C

## FLEETWOOD FOOD CORP.
## BALANCE SHEET
## AS OF 3/4/2011

| ASSETS | BOOK VALUE |
|---|---|
| Unrestricted Cash and Equivalents | $10,000.00 |
| Leasehold Improvements | $2,500,000.00 |
| Security Deposits | $65,000.00 |
| Inventories | $100,000.00 |
| Key Food Rebate | $50,000.00 |
| Equity in Co-Operative | $50,000.00 |
| Potential claim against City of Mt Vernon | unknown |
| General Intangibles | |
|    Key Food Co-op Membership | unknown |
|    NYS lotto, beer & food stamp licenses | unknown |
| TOTAL ASSETS | $2,775,000.00 |
| **LIABILITIES** | **BOOK VALUE** |
| Key Food Stores Co-Operative | $578,685.29 |
| Equipment Lease - Resnick | $360,000.00 |
| Equipment Lease - Sterling | $80,000.00 |
| Sales Taxes | $10,000.00 |
| Insurance | $15,000.00 |
| Workers' Compensation | $10,000.00 |
| Rent | $30,000.00 |
| Utilities | $60,000.00 |
| Buildout Contractors | $1,850,000.00 |
| Trade Vendors | $100,000.00 |
| TOTAL POST-PETITION LIABILITIES | $3,093,685.29 |

## Exhibit D

**FLEETWOOD FOOD CORP.**
**30 DAY BUDGET**

| RECEIPTS | |
|---|---|
| CASH SALES | $200,000.00 |
| ACCOUNTS RECEIVABLE | |
| LOANS AND ADVANCES | |
| SALE OF ASSETS | |
| OTHER *(ATTACH LIST)* | |
| **TOTAL RECEIPTS** | $200,000.00 |
| | |
| **DISBURSEMENTS** | |
| GROSS PAYROLL | $56,000.00 |
| SALES, USE, & OTHER TAXES | $2,000.00 |
| INVENTORY PURCHASES | $130,000.00 |
| BUILDING RENT | $21,000.00 |
| SECURED/ RENTAL/ LEASES | $11,800.00 |
| UTILITIES | $20,600.00 |
| INSURANCE | $3,000.00 |
| US TRUSTEE FEES (PRO RATED FROM $4,875) | $1,625.00 |
| ADEQUATE PROTECTION PAYMENTS | $4,000.00 |
| **TOTAL DISBURSEMENTS** | $250,025.00 |
| | |
| | |
| NET CASH FLOW | -$50,025.00 |
wrong